IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–00812–KMT

TEZRA LAWRENCE,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

## ORDER

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Tezra Lawrence's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

### FACTUAL AND PROCEDURAL BACKGROUND

Claimant applied for SSI and DIB in January 2011, alleging that she had been disabled by panic attacks, depression, anxiety, and borderline personality disorder since October 2010. (*See* Doc. No. 10, Social Security Administrative Record ["AR"] at 147, 159, 197.) The Commissioner denied both applications. (*See id.* at 11, 85.) Following the denials, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 26–58, 91.) After the hearing, the ALJ determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act, because Claimant was still capable of performing substantial

gainful work in the national economy. (*See id.* at 20–21.) The Appeals Council subsequently denied Claimant's request for review (*id.* at 1), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Claimant timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Titles II and XVI of the Act award Social Security benefits to claimants who meet certain eligibility requirements. 42 U.S.C. §§ 423, 1382. To receive either DIB or SSI, a claimant must be disabled. §§ 423, 1382. The Social Security Commissioner has established a five-step sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of

performing substantial gainful work in the national economy. *Id.* If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and caselaw. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

## ANALYSIS

Claimant argues the ALJ erred in three ways. First, the claimant contends that the claimant's mental impairments met an Appendix 1 listing and that it was an error for the ALJ to determine otherwise. (*See* Doc. No. 13 [Opening Br.] at 19–26, filed Nov. 4, 2014.) Second, the claimant argues that the ALJ failed to adequately develop the record on the claimant's physical

impairments. (*See id.* at 26–28.) Third, the claimant finds fault with the ALJ's questioning of the vocational expert during the administrative hearing. (*See id.* at 28–30.)

**The ALJ's Determination that Claimant's Mental Impairments Do Not Meet or Equal an Appendix 1 Listing**

At step three of the disability review process, the ALJ concluded that the claimant's impairments did not meet or equal an Appendix 1 listing. (*See* AR at 14–16.) The claimant argues that her mental impairments either meet or equal a listing and that the ALJ's conclusions otherwise are unsupported by substantial evidence. (*See* Opening Br. at 20–26.)

To meet or equal an Appendix 1 listing, the claimant must show that her impairment meets all of the applicable criteria, which is usually some combination of those requirements listed in subparagraphs A, B, and C of the applicable section of Appendix 1. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. For a claimant's impairment to meet the requirements of section 12.04 (affective disorders) of Appendix 1, the impairment must meet the criteria of Paragraph C or Paragraphs A plus B. *Id.* For section 12.06 (anxiety-related disorders), a claimant's impairment must meet the criteria of Paragraphs A plus B, or Paragraphs A plus C. § 12.06. For section 12.08 (personality disorders), a claimant's impairments must meet the criteria of Paragraphs A plus B. §12.08. The Paragraph A criteria for sections 12.04, 12.06, and 12.08 concern various conditions or symptoms potentially associated with each section's disorder. The court declines to burden the record with a recitation because, as will be discussed, the Paragraph A criteria are not necessary to the court's analysis. The Paragraph B criteria for sections 12.04, 12.06, and 12.08 are identical:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or

      3. Marked difficulties in maintaining concentration, persistence, or pace; or

      4. Repeated episodes of decompensation, each of extended duration.

§§ 12.04, 12.06, 12.08. The Paragraph C criteria for sections 12.04 and 12.06 differ. For section 12.04, the claimant meets the criteria of Paragraph C if the claimant has:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.04. For section 12.06, the Paragraph C requirements are met when the medically documented findings in Paragraph A result "in complete inability to function independently outside the area of one's home." § 12.06. There is no Paragraph C of section 12.08. *See* § 12.08.

      Here, the ALJ explained why none of the claimant's impairments met the Paragraph B criteria of sections 12.04, 12.06, 12.08. The ALJ began by concluding that the claimant has only mild restrictions in activities of daily living, explaining that the claimant "perform[s] most household chores, including dishes, laundry and vacuuming," and "has a driver's license and shops for herself." (AR at 15.) The ALJ then concluded that the claimant has moderate difficulties in social functioning, citing the claimant's difficulty getting along with others,

5

especially authority figures; the claimant's spending a lot of time alone away from her family; and the claimant's reports of going to clubs and movies with friends. (*Id.*) Next, the ALJ concluded that the claimant has mild difficulties in maintaining concentration, persistence, or pace. (*Id.*) As support for this conclusion, the ALJ noted the claimant's memory problems but highlighted the claimant's ability to watch television, play on the computer, write poetry, and construct necklaces. (*Id.*) The ALJ then concluded that the claimant has had no episodes of decompensation of extended duration. (*Id.*) Finally, the ALJ concluded that the Paragraph B criteria were not met because none of the claimant's mental impairments amounted to at least two "marked" limitations; or one marked limitation and "repeated" episodes of decompensation, each of extended duration. (*Id.*)

> The ALJ also concluded that the claimant had not met the Paragraph C criteria because:
>
> the evidence does not demonstrate a medically documented history of a chronic organic mental disorder or affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do any basic activity, with symptoms or signs currently attenuated by medical or psychosocial support, and a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

(*Id.* at 15–16.) The ALJ added only that "no treating or examining physician has mentioned findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments." (*Id.* at 16.) The ALJ did not address whether the claimant met any Paragraph A criteria. (*See id.* at 15–16.)

The ALJ's failure to address whether the claimant met any Paragraph A criteria is not, by itself, reversible error. The ALJ need not address the Paragraph A criteria of sections 12.04,

12.06, 12.08 of Appendix 1 if, as the ALJ did here, the ALJ finds that the claimant's impairments do not meet the Paragraph B or C criteria.  *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.08 (requiring that the claimant meet more than the Paragraph A criteria).  The court therefore turns to the ALJ's consideration of Paragraph B and C criteria.

The court agrees with the defendant that there is substantial evidence to support the ALJ's Paragraph B conclusions.  The claimant's daily activities, including the performance of most household chores and shopping for herself, are significant enough to support the ALJ's conclusion that the claimant is only mildly limited in her daily activities.  The claimant's troubles getting along with others is mitigated by the fact that she goes to clubs with friends, which supports the ALJ's conclusion that the claimant is only moderately limited in her social functioning.  The claimant's ability to write poetry, construct necklaces, and play on the computer signifies at least some ability to maintain concentration, persistence, and pace, which supports the ALJ's conclusion that the claimant was only mildly limited in these areas.  Finally, though the ALJ does not offer any explanation for her conclusion that the claimant did not have any episodes of decompensation of extended duration, the court agrees that one panic attack, one crying episode, and the claimant's withdrawal from mental health treatment do not meet the Paragraph B definition of "repeated episodes of decompensation, each of extended duration." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 ¶ B.

As to the section 12.04 and 12.06 Paragraph C criteria, however, the ALJ offers only that "the evidence does not demonstrate" that the claimant meets the criteria. (*See* AR at 15–16.)  The ALJ does not explain or justify this conclusion.  (*See id.*)  Moving directly to the most problematic of the three criteria, the second criterion of Paragraph C of section 12.04 and 12.06

7

is met if the claimant has "a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 ¶ C. The record contains evidence of the claimant decompensating after even minimal increases in mental demands or changes in the environment. (*See, e.g*, AR at 34, 47–48, 52, 263.) In one instance, the claimant had a panic attack, which resulted in her hospitalization, when she received a new supervisor. (*See id.* at 52.) In another instance, the claimant withdrew from mental health treatment when her therapist changed. (*See id.* at 47–48.) The claimant also cried throughout the majority of one doctor's psychiatric evaluation. (*Id.* at 263.) The claimant's "bashful bladder" during a drug test as part of her first day on a job also led her to have a panic attack. (*See id.* at 34.) Though the ALJ later discounts the claimant's testimony about the intensity, persistence, and limiting effects of her symptoms (*see id.* at 18), the ALJ never indicated doubt that these episodes of decompensation occurred (*see id.* at 12–21), which is all that the second criterion of Paragraph C appears to require. The ALJ's statement that "no treating or examining physician has mentioned findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments," even if true, does not contradict these examples of Paragraph C evidence. Moreover, the fact that one examining physician noted that the claimant cried during more than half of the psychiatric evaluation—a fact specifically mentioned by the ALJ in the written decision (*see id.* at 18)—indicates that at least one examining physician's findings do, contrary to the ALJ's assertions, suggest that the claimant's impairments meet the second criterion of Paragraph C.

Given the absence of a sufficient explanation for the ALJ's Paragraph C conclusion and the existence of uncontradicted and undisputed evidence that the claimant meets the second criterion of Paragraph C, this court concludes that the ALJ has not articulated a sufficient basis to determine whether the ALJ's Paragraph C conclusion is supported by evidence.  This is reversible error.  *Byron*, 742 F.2d at 1235 (10th Cir. 1984).  The court is not empowered to invent ad-hoc justifications for the ALJ's conclusions.  Nor is it authorized or inclined to scour the record in search of evidence that might support the ALJ's position.  *Cf. Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("judges are not like pigs, hunting for truffles buried in briefs").

The court does not reach or address Claimant's remaining arguments.  The issues raised in those arguments may be resolved by reconsideration and rehearing.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner.  It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 23rd Day of September, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge